Mr. Justice Millek
delivered the opinion of the court:
This is an appeal by the claimant from a decree of the Court of Claims, dismissing.absolutely her petition for the proceeds of certain cotton seized and sold under the acts of Congress concerning captured and abandoned property in the States recently in insurrection.
The sole question in the case is whether appellant was the owner of the cotton at the time of its seizure by the agents of the United States, and this must be decided as a matter of law on the finding of facts made by the Court of Claims, notwithstanding the frequent reference of counsel to the view which he takes of the evidence given in that court.
It seems to be established that the claimant had a just demand for a large amount against her step-father, which was-secured by a mortgage on a valuable cotton-farm in Mississippi, the life estate of which was in her mother, that estate being-covered by the mortgage. Some time in the year 1862, both mother and daughter being widows, and the war flagrant in Mississippi, it is alleged that a contract was .made between them, by which the cotton in question, then owned by her mother, was turned over to and purchased by the appellant in part payment of the debt secured by said mortgage; and whether this transaction transferred the title of the cotton to plaintiff is the question to be decided. The finding of facts. *143 on this point is thus stated by the Court of Claims: “After the death of James H. Mitchell, and after the cotton had been thus removed to Kingston, but before the capture of Natchez, by the United States forces, and before the passage of the Abandoned or captured property Act, a parol agreement was made between Mrs. Mitchell and Mrs. Mahan, to the effect that the latter should take the cotton as a payment upon the mortgage before described. The price was fixed at 20 cents per pound, but the number of pounds was not definitely ascertained, neither was any payment indorsed upon the mortgage, nor any receipt given, nor any memorandum in writing made, nor any present consideration paid. Neither did any change of possession take-place, nor was there any delivery, actual or symbolic. The cotton remained at Kingston until its seizure by the military forces-of the United States, immediately upon which the claimant asserted that she was the owner, and sought to procure its release.”
It is strongly urged by counsel for claimant that, by the common law, these facts constituted a valid sale of the property, and that, as there was no statute of frauds in force in the State of Mississippi requiring delivery or a written memorandum to. make a sale of personal property valid, the parol agreement set out in this finding constituted a valid sale. Whether this would be so in the absence of such a statute as most of the States, have on that subject, might admit of serious debate.
But, while there is no such provision in the authorized publication of the statutes of Mississippi of 1840, by Howard & Hutchinson, to which we have been referred, we find in the Revised Code of Mississippi of 1857, which, from our own researches, we are bound to believe was the law in force when this agreement was made, a very stringent provision on this-subject in the statute of frauds and perjuries of that code.
Article four of chapter forty-four (page 359) enacts that no contract for the sale of any slaves, personal property, goods, wares, and merchandise for the price of $50 or upward shall be allowed to be good and valid, except the buyer shall receive the slaves, or part of the personal property, goods, wares, and merchandise, or shall actually pay or secure the purchase-money,, or part thereof, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged by such contract, or his agent thereunto lawfully authorized.
*144 • The finding of the Court of Claims negatives in the most express terms the existence in the agreement, by which the title of the cotton was supposed to be transferred, of each and every one of the acts or conditions, some one of which is by that statute made necessary to the validity of the contract.
To hold that an agreement which that statute declares shall not be allowed to be good and valid was sufficient to transfer the title of the property to claimant, would be to overrule the uniform construction of this or a similar clause in all statutes of frauds by all the courts which have construed them.
The Court of Claims held that the agreement passed no title, and we concur in their conclusion on that subject.
It is unnecessary to examine into the effect of the transaction as a gift inter vivos. The finding that there was no delivery would be as fatal to such a gift as to the agreement of sale; besides, there is nothing in the petition of plaintiff, or in the findings of the Court of Claims, on which such a gift could be considered as in the issue. The finding that it was a parol contract of sale is directly opposed to the idea of a gift.
The decree of the Court of Claims is therefore affirmed.